UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCKE WILLIAM DILBERT,

    Petitioner,

v.                                               CASE NO. 8:13-CV-2189-T-30MAP
                                               CRIM. CASE NO. 8:11-CR-631-T-30MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

Before the Court are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Dkt. 1), and Memorandum in support of the § 2255 motion (CV Dkt. 2). Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (The summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief."); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) of § 2255 allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'") (quoting Rule 4,

Rules Governing Section 2255 Cases). After a preliminary review, the Court concludes that the § 2255 motion should be denied.

## BACKGROUND

Petitioner and his co-defendants were indicted in a two-count Indictment charging violations of the Maritime Drug Law Enforcement Act (MDLEA), Title 46, U.S.C., Sections 70503(a) and 70506(a) and (b) (CR Dkt. 1). Count One charged that Petitioner and his co-defendants conspired to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. Count Two charged that Petitioner aided and abetted his co-defendants in the possession with intent to distribute five kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States.

On March 7, 2012, the United States filed a "Plea Agreement" which had been executed by Petitioner (CR Dkt. 139). Petitioner admitted the following in the Factual Basis section of the Plea Agreement:

> On or about December 2, 2011, [Petitioner], along with sixteen co-defendants, was aboard the fishing vessel MR GEO encountered by the USS OAK HILL in international waters of the western Caribbean Sea. As the USS OAK HILL came on the scene, the MR GEO began maneuvering erratically and defendants aboard the MR GEO jettisoned bales of cocaine into the water.
>
> On questioning by U.S. Coast Guard law enforcement personnel embarked on the USS OAK HILL, the captain of the MR GEO claimed Honduran nationality for the vessel. The U.S. Coast Guard contacted the government of Honduras, which confirmed the claim of nationality and granted the United States permission to board and search the MR GEO.

2

>       Meanwhile, U.S. Coast Guard and Navy personnel recovered sixty-five (65) of the jettisoned bales of cocaine from the water. The recovered cocaine weighed in excess of two thousand (2,000) kilograms. The defendant, along with his co-defendants, knew the cocaine was on board the vessel and was assisting in its transportation for later distribution. The packaging of the bales was typical of narcotics packaged for at-sea transport and later distribution. Testing later verified that the substance contained in the bales was in fact cocaine, a Schedule II controlled substance.
>
>       On December 20, 2011, the government of Honduras waived its primary right to jurisdiction over the MR GEO and the defendants, who were later transported to the United States, first arriving inn the Middle District of Florida.

(CR Dkt. 139, ¶ 9, pp. 17-18).

On April 2, 2012, Petitioner entered his guilty plea pursuant to the Plea Agreement (CR Dkt. 157). Once again, at that hearing, Petitioner accepted the factual basis underlying his guilty plea as stated in the Plea Agreement. On July 24, 2012, Petitioner was sentenced to 135 months incarceration, to be followed by 5 years supervised release (CR Dkt. 402).

Petitioner appealed. On May 20, 2013, the Eleventh Circuit Court of Appeals affirmed (CR Dkt. 458).

Petitioner filed the instant § 2255 motion claiming that:

1.   the Court lacked jurisdiction to adjudicate his case because he was arrested in the territorial waters of Honduras (Grounds One and Two); and

2.   his sentence must be vacated pursuant to *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

3

## DISCUSSION

**I      Jurisdictional claim**

Grounds One and Two of the § 2255 motion rely on *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), which does not apply to Petitioner's case. In *Bellaizac-Hurtado*, the Eleventh Circuit ruled that the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70503(a), et. seq., was unconstitutional as applied to the drug-trafficking activities of the defendants in that case, which occurred in the territorial waters of Panama. *Id*. at 1258. The Eleventh Circuit held that "Congress exceeded its power, under the Offences Clause [of the U.S. Constitution] when it proscribed the defendants' [drug trafficking] conduct in the territorial waters of Panama." *Id*. In *United States v. McPhee*, 336 F.3d 1269 (11th Cir. 2003), the Eleventh Circuit stated that "[t]he United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts." *Id*. at 1273.

In his Plea Agreement, Petitioner admitted that his arrest location was in international waters (CR Dkt. 139 at p. 17). In the instant § 2255 motion, Petitioner argues that territorial waters extend 200 nautical miles beyond a coastal state, and that he was taken into custody 90 miles off of the Honduras coast. In support of his argument, Petitioner appears to rely on the United Nations Convention on the Law of the Sea ("UNCLOS").[1]

---

[1] Available at http://www.un.org/Depts/los/convention_agreements/convention_overview_convention.htm.

Article 2 of UNCLOS states that "[e]very state has the right to establish the breadth of its territorial sea up to a limit not exceeding 12 nautical miles, measured from baselines determined in accordance with this Convention." Article 55 states that "[t]he exclusive economic zone is an area beyond and adjacent to the territorial sea." Article 57 states that "[t]he exclusive economic zone shall not extend beyond 200 nautical miles from the baselines from which the breadth of the territorial sea is measured."

Petitioner implicitly argues that this Court should consider the 200-nautical-mile exclusive economic zone ("EEZ") as territorial waters and apply *Bellaizac-Hurtado*. This misinterprets UNCLOS, which defines the EEZ as "an area *beyond and adjacent to the territorial sea*." UNCLOS, art. 55, Dec. 10 1982, 1883 U.N.T.S. 397 (emphasis added). Petitioner does not cite any authority to explain why a Court in this circuit is not required to follow Eleventh Circuit precedent in *McPhee* and apply the 12-nautical-mile definition of territorial waters.

**II.**   ***Alleyne v. United States***

In Grounds Three and Four of the § 2255 motion, Petitioner appears to argue that he is entitled to relief from his sentence pursuant to *Alleyne*. *Alleyne* held that "facts that increase mandatory minimum sentences must be submitted to the jury." 133 S. Ct. at 2163.

Petitioner is not entitled to relief under *Alleyne*. First, although he alleges that *Alleyne* is "retroactive," Petitioner fails to allege any facts which show that he is entitled to relief under *Alleyne*. Second, the rule announced in *Alleyne* is not retroactive to cases on collateral

5

review. *See, e.g., Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) ("*Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The [Supreme Court] Justices have decided that other rules based on *Apprendi* do not apply retroactively on collateral review."). Third, even if *Alleyene* can be applied retroactively to cases on collateral review, it is irrelevant to Petitioner's case. During his plea colloquy, Petitioner admitted to the fact used to support his ten-year minimum mandatory sentence under 21 U.S.C. § 960(b)(1)(B)(ii), i.e., smuggling five kilograms or more of cocaine (CR Dkt. 439 at 26-27). *See United States v. Wimberly*, 2013 U.S. App. LEXIS 13360, 2013 WL 3214988, at *1 (6th Cir. June 26, 2013) (per curiam) ("[T]he holding of *Alleyne* is irrelevant to this case because Wimberly entered a guilty plea and specifically admitted discharging a firearm during the credit-union robbery . . . , the fact used to support his mandatory minimum sentence.").

Accordingly, the Court **ORDERS** that Petitioner's motion to vacate (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Petitioner and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize the Petitioner to proceed on appeal *in forma pauperis* because such an appeal would not be taken in good faith. See 28 U.S.C. §

1915(a)(3). Petitioner shall be required to pay the full amount of the appellate filing fee pursuant to § 1915(b)(1) and (2).

**DONE** and **ORDERED** in Tampa, Florida on September 25, 2013.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copies furnished to:
Petitioner, *pro se*
Counsel of Record